UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
─────────────────────────────────────

PENSION, HOSPITALIZATION & BENEFIT
PLAN OF THE ELECTRICAL INDUSTRY,

                                                               **23-cv-8938 (JGK)**

    Plaintiff/Counter Defendant,                              **MEMORANDUM OPINION AND**
                                                              **ORDER**

                  - against -

CONVERGEONE DEDICATES SERVICES, LLC,

    Defendant/Counter Claimant.
─────────────────────────────────────

**JOHN G. KOELTL, District Judge:**

    The plaintiff, the Pension Hospitalization & Benefit Plan of the Electrical Industry (the "Pension Plan"), filed the current action seeking to vacate an arbitration award issued pursuant to the Employee Retirement Income Security Act ("ERISA"), Section 4221(b)(2), 29 U.S.C. § 1401(b)(2) and 29 C.F.R. § 4221.9. The plaintiff is a multiemployer pension plan as defined in Sections 3(37) and 4001(a)(3) of ERISA, 29 U.S.C. §§ 1002(37), 1301(a)(3). The defendant, ConvergeOne Dedicated Services, LLC ("ConvergeOne"), is a limited liability corporation and a signatory to a Collective Bargaining Agreement ("CBA") between the plaintiff and the defendant.

    The underlying dispute arose out of the defendant's decision to withdraw from the Pension Plan. Pursuant to 29 U.S.C. § 1399(b), the plaintiff notified the defendant that the

defendant owed $7,843,704 in withdrawal liability. The defendant objected to that amount and filed a Demand for Arbitration.

On September 11, 2023, the arbitrator concluded that the withdrawal liability assessment that the Pension Plan issued to ConvergeOne was unreasonable and contrary to Section 1393(a)(1) of ERISA. See ECF No. 1-1 ("Arbitration Decision") at 25. The arbitrator directed the Pension Plan to redetermine ConvergeOne's withdrawal liability. See id.

The Pension Plan now moves to vacate the arbitrator's award, see ECF No. 24, and ConvergeOne moves to confirm the arbitrator's award, see ECF No. 22.

**I.**

The following facts are undisputed for the purposes of this motion, unless otherwise indicated.

**A.**

The parties agree that ConvergeOne was formerly a signatory to a CBA, under which it was obligated to make contributions to the Pension Plan. During the plan year ending September 30, 2021, ConvergeOne completely withdrew from the Pension Plan, pursuant to 29 U.S.C. § 1381. On or about September 15, 2021, the Pension Plan notified ConvergeOne of its withdrawal liability pursuant to 29 U.S.C. § 1399(b). See Compl. ¶ 19, ECF No. 1.

The Segal Group, Inc. ("Segal") served as the Pension Plan's actuary to calculate ConvergeOne's withdrawal liability. See Arbitration Decision at 2. The actuary used a method – the "Segal Blend" method - to calculate that amount. Under the Segal Blend method, two interest rates are generated and blended in calculating the present value of vested benefits. The two interest rates are: 1) a rate based on the actuary's assumption of the plan's future investment returns that is used to determine minimum funding requirements; and 2) interest rates published by the Pension Benefit Guaranty Corporation ("PBGC") to be used for actuarial assumptions for valuing benefits in the case of a mass withdrawal. The PBGC interest rates are based on the average market price of a life annuity, which the agency determines from a quarterly survey of insurance companies.[1] Based on this method, the actuary's calculation yielded a withdrawal liability of $7,843,704, which was the amount the Pension Plan determined that ConvergeOne was required to pay. See id. at 2-3.

---

[1] "The PBGC rates are used to determine the value of future liabilities for plans that are terminated by a 'mass withdrawal,' which occurs when all employers completely withdraw from a multiemployer plan . . .. When a plan undergoes a mass withdrawal, the plan must purchase annuities to cover the promised benefits unless the plan assets can be distributed in full satisfaction of all covered benefits." Sofco Erectors, Inc. v. Trs. of Ohio Operating Eng'rs Pension Fund, 15 F.4th 407, 420-21 (6th Cir. 2021).

On or about December 31, 2021, ConvergeOne requested that the Pension Plan recalculate ConvergeOne's withdrawal liability assessment, pursuant to § 1399(b)(2). Compl. ¶ 20, ECF No. 1. ConvergeOne alleged that the Pension Plan's actuary had improperly calculated the present value of the Pension Plan's unfunded vested benefits, specifically that the Pension Plan had used a discount rate different from the interest rate it used to calculate its best estimate of the anticipated rate of return on the Pension Plan's assets. ConvergeOne alleged that the difference in the rates increased its calculated withdrawal liability.

**B.**

On March 25, 2022, ConvergeOne filed a Demand for Arbitration. See Arbitration Decision at 4. On September 11, 2023, the arbitrator issued an arbitration award, concluding that the withdrawal liability assessment issued against ConvergeOne by the Pension Plan was contrary to 29 U.S.C § 1393(a)(1). See id. at 25. Section 1393(a)(1) provides that withdrawal liability shall be determined by each plan on the basis of "actuarial assumptions and methods which, in the aggregate, are reasonable (taking into account the experience of the plan and reasonable expectations) and which, in combination,

4

offer the actuary's best estimate of anticipated experience
under the plan[.]" (emphasis added).[2]

In this case, it is undisputed that the actuary used the
Segal Blend method to calculate ConvergeOne's withdrawal
liability. See Arbitration Decision at 2. And it is likewise
uncontested that the Pension Plan did not hold more conservative
investments and had no intention to do so. See id. at 3.
Nevertheless, the actuary did not use a rate based on the
Pension Plan's predicted return rate, and instead used the
blended rate under the Segal Blend method. See id. at 4. By
using the Segal Blend and the PBGC interest rates – rather than
the Pension Plan's expected return on its portfolio of
investments (7.25%) – the actuary lowered the actual rate of
return on investment and increased the amount of the withdrawal
liability. And, because employers withdrawing from funds must
pay a proportionate amount of the unfunded liability, see 29
U.S.C. §§ 1381, 1391, a lower interest-rate assumption results
in higher withdrawal liability.

The actuary in this case acknowledged that, by including
the PBGC rates, his calculation of the present value of benefit
obligations did not reflect the Pension Plan's expected return

---

[2] Unless otherwise noted, this Memorandum Opinion and Order omits
all internal alterations, citations, footnotes, and quotation
marks in quoted text.

on assets. See id. at 16. And, based on these facts, the
arbitrator found that the application of the Segal Blend method
in this case "failed to comply with the statutory directive that
the assumptions and methods used, in the aggregate, represent
'the actuary's best estimate of anticipated experience under the
plan.'" Id. (quoting 29 U.S.C. § 1393(a)(1)).

The arbitrator reached this conclusion after determining
that applying the Segal Blend method in these circumstances was
contrary to the opinions of three Courts of Appeals and a 2018
opinion from the Southern District of New York. Id. at 17-20
(citing GCIU-Emp. Ret. Fund v. MNG Enters., Inc., 51 F.4th 1092,
1100 (9th Cir. 2022); United Mine Workers of Am. 1974 Pension
Plan v. Energy W. Mining Co., 39 F.4th 730, 738-41 (D.C. Cir.
2022); Sofco Erectors, Inc., 15 F.4th at 421; see also
Arbitration Decision at 20-22 (citing New York Times Co. v.
Newspaper and Mail Deliverers' – Publishers' Pension Fund, 303
F. Supp. 3d 236, 255 (S.D.N.Y. 2018)).

The arbitrator therefore directed the Pension Plan to
redetermine ConvergeOne's withdrawal liability based on the
actuary's 7.25% best estimate of the anticipated rate of return
on the Pension Plan's assets to calculate the present value of
vested benefits. Arbitration Decision at 25.

Following the arbitrator's decision, the Pension Plan filed
the present complaint seeking to vacate the arbitrator's

decision. The Pension Plan and ConvergeOne have now filed cross motions for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). See ECF Nos. 22, 24. ConvergeOne seeks to confirm the arbitrator's award, and the Pension Plan seeks to vacate that award.

**II.**

**A.**

The standards to be applied to a motion for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c) are the same as those applied to a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). Cleveland v. Caplaw Enters., 448 F.3d 518, 521 (2d Cir. 2006). "Thus, [a court] will accept all factual allegations in the complaint as true and draw all reasonable inferences in [the plaintiff's] favor. To survive a Rule 12(c) motion, [the] complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Hayden v. Paterson, 594 F.3d 150, 160 (2d Cir. 2010).

In deciding such a motion, the court may consider documents that are referenced in the complaint, documents that the plaintiff relied on in bringing suit and that either are in the plaintiff's possession or were known to the plaintiff when the plaintiff brought suit, or matters of which judicial notice may be taken. See Chambers v. Time Warner, Inc., 282 F.3d 147, 153

7

(2d Cir. 2002); Brass v. Am. Film Techs., Inc., 987 F.2d 142,

150 (2d Cir. 1993); see also D'Amico Dry Ltd. v. Primera Mar.

(Hellas) Ltd., 116 F. Supp. 3d 349, 351 (S.D.N.Y. 2015).

**B.**

In their respective motions, the parties seek review of the

arbitrator's decision that the Pension Plan should redetermine

ConvergeOne's withdrawal liability amount. "Arbitral decisions

over ERISA disputes are subject to judicial review by federal

courts." New York Times Co., 303 F. Supp. 3d at 242 (citing 29

U.S.C. § 1401(b)(2)).

ERISA provides that in an arbitration proceeding, there

"shall be a presumption, rebuttable only by a clear

preponderance of the evidence, that the findings of fact made by

the arbitrator were correct[,]" 29 U.S.C. 1401(c), but the

statute is silent regarding the appropriate standard of review

to be applied to an arbitrator's legal conclusions. Every Court

of Appeals to have addressed this question in the context of an

ERISA arbitration proceeding to determine withdrawal liability

has reviewed the arbitrator's legal conclusions de novo. See

Sofco Erectors, Inc., 15 F.4th at 420; GCIU-Emp. Ret. Fund, 51

F.4th at 1097; Energy West, 39 F.4th at 737.

In this case, the parties do not dispute the arbitrator's

factual determinations, and agree that this Court should review

the arbitrator's legal conclusions de novo. See Hearing Tr. 6,

11, 16-17. But the standard of review in this case is not determinative of the outcome, because the arbitrator's decision survives de novo review and clear error review. See Wu Lin v. Lynch, 813 F.3d 122, 128 (2d Cir. 2016) (recognizing that a clear error has been committed "[i]f the findings of fact are against the clear weight of the evidence or the appellate court otherwise reaches a definite and firm conviction that a mistake has been made by the trial court[.].") (quoting 9C Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 2585 (3ed. 2007).[3]

---

[3] At least one district court judge in this Circuit concluded that clear error review applies to mixed questions of law and fact, including the question of whether the Segal Blend's use was reasonable in the aggregate. See New York Times Co., 303 F. Supp. 3d at 247 (citing 666 Drug, Inc. v. Tr. of 1199 SEIU Health Care Emps. Pension Fund, 571 F. App'x 51, 52 (2d Cir. 2014); HOP Energy, LLC v. Local 553 Pension Fund, 678 F.3d 158, 160 (2d Cir. 2012); 29 U.S.C § 1401(c)); see also National Retirement Fund on Behalf of Legacy Plan of National Retirement Fund v. Metz Culinary Management, Inc., 946 F.3d 146, 149 (2d Cir. 2020) ("We review an arbitrator's legal conclusions made under Section 4221 of ERISA de novo. . . [b]y contrast, factual findings made by an arbitrator enjoy a "presumption of correctness."). In New York Times Company, Judge Sweet concluded that the question of whether the Segal Blend's use was reasonable in the aggregate presented a mixed question of fact and law, and reversed the arbitrator's decision that the use of the Segal Blend method was reasonable in the aggregate based on clear error review. See 303 F. Supp. 3d at 255 (citing 666 Drug, Inc. v. Tr. of 1199 SEIU Health Care Emps. Pension Fund, No. 12-cv-1251, 2013 WL 4042614, at *5 (S.D.N.Y. Aug. 8, 2013), aff'd, 571 F. App'x 51.

**i.**

The actuarial assumptions and methods used in determining ConvergeOne's withdrawal liability were, in the aggregate, unreasonable, and the arbitrator's decision is therefore confirmed.

29 U.S.C. § 1393(a) states that withdrawal liability shall be based on:

> (1) <u>actuarial assumptions and methods which, in the aggregate</u>, are reasonable (taking into account the experience of the plan and reasonable expectations) and which, in combination, <u>offer the actuary's best estimate of anticipated experience under the plan</u>, or
>
> (2) actuarial assumptions and methods set forth in [PBGC's] regulations for purposes of determining an employer's withdrawal liability. (emphasis added).

In this case, the option provided in 29 U.S.C. § 1393(a)(2) is unavailable because, as of the date of the Pension Plan's determination of ConvergeOne's withdrawal liability, there was no PBGC regulation in effect for determining an employer's withdrawal liability. <u>See</u> Arbitration Decision at 16. For this reason, the Pension Plan was required to determine ConvergeOne's withdrawal liability based on the standard set forth in 29 U.S.C. § 1393(a)(1).

The actuary responsible for computing the withdrawal liability testified that the expected return on the Pension Plan's assets was 7.25%. <u>See</u> Arbitration Decision at 16. But, the actuary did not use that rate exclusively in determining

ConvergeOne's withdrawal liability. Id. Instead, the actuary

used the Segal Blend method to combine the value of the

liabilities based on the 7.25% rate with their value based on

the interest rates the PBGC publishes. Id. And, the actuary

acknowledged that, "by using the PBGC rates, his calculation of

the present value of benefit obligations was not entirely based

on [the Pension Plan's] expected return on assets." Id. By using

the Segal Blend method, therefore, the actuary mixed the actual

rate of return with a rate based on more conservative

investments.

**ii.**

The Second Circuit Court of Appeals has yet to rule on the

permissibility of using the Segal Blend method to calculate

withdrawal liability under ERISA, based on "the actuary's best

estimate of anticipated experience under the plan." 29 U.S.C. §

1393(a)(1). Nevertheless, the arbitrator's decision to

recalculate ConvergeOne's withdrawal liability in this case is

consistent with the three Circuit Courts of Appeals that have

addressed this issue, confirming that an actuary must rely on an

estimate based on the plan's particular and actual

characteristics.

In Sofco Erectors, the Sixth Circuit Court of Appeals

affirmed the district court's decision, specifically addressing

the use of the Segal Blend method, and finding that the

actuary's use of the Segal Blend method in that case violated
ERISA because "the resulting interest rate is not 'the actuary's
best estimate of anticipated experience under the plan.'" 15
F.4th at 421 (citing 29 U.S.C. § 1393(a)(1)).

By contrast, neither the D.C. Circuit Court of Appeals nor
the Ninth Circuit Court of Appeals focused on the use of the
Segal Blend method specifically, but instead addressed whether
it was permissible to estimate interest rates in calculating
withdrawal liability based on the PBGC's rates – as the actuary
did here. See Energy West, 39 F.4th at 738-41; GCIU-Emp. Ret.
Fund, 51 F.4th at 1100. In Energy West, the D.C. Circuit Court
of Appeals concluded that the actuary violated ERISA by using a
risk-free discount rate assumption, because "the actuary must
make assumptions based on the plan's particular characteristics
when calculating withdrawal liability[,]" 39 F.4th at 738, and,
"[w]hile there may be a reasonable range of estimates, the
discount rate assumption cannot be divorced from the plan's
anticipated investment returns." Id. at 740. Similarly, in GCIU,
the Ninth Circuit Court of Appeals found that the actuary's use
of the PBGC interest rate did not satisfy ERISA's "best estimate
standard," because it did not "reflect the plan's
characteristics." GCIU, 51 F.4th at 1099.

12

**iii.**

In this case, the Pension Plan relies on the Supreme
Court's decision in <u>Concrete Pipe & Products, Inc. v.
Construction Laborers Pension Trust for Southern California</u> to
support its contention that use of the Segal Blend method was
consistent with ERISA. <u>See</u> 508 U.S. 602, 635 (1993) (holding
that, when challenging a pension fund's calculation of
withdrawal liability, an employer must show that "the
combination of methods and assumptions employed in the
calculation would not have been acceptable to a reasonable
actuary."). The Pension Plan insists that pension funds
routinely use the Segal Blend method to calculate withdrawal
liability, <u>see</u> ECF No. 26 at 8-9, and that this practice is
consistent with <u>Concrete Pipe</u>'s assertion that "the assumptions
used by the [Pension] Plan in its calculations may be
supplemented by several actuarial assumptions unique to
withdrawal liability." <u>Id.</u> at 7 (citing 508 U.S. at 633).

Although using two different interest rates for minimum
funding and withdrawal liability purposes is not per se
unlawful, <u>see</u> <u>Concrete Pipe</u>, 508 U.S. at 633, as the Sixth
Circuit Court of Appeals concluded in <u>Sofco</u>, an actuary's
calculations can violate ERISA when the interest rates the
actuary relies on do not reflect the "anticipated experience

under the plan." See 15 F.4th at 420 (quoting 29 U.S.C. §
1393(a)(1).

The actuary's use of the Segal Blend method in this case
fails for the same reason as the actuary's use of the Segal
Blend method violated ERISA's provisions in Sofco. By using the
Segal Blend method to calculate ConvergeOne's withdrawal
liability, the actuary relied on assumptions underlying the use
of the PBGC rates that were not based on the plan's
characteristics, namely, its actual investments. The Pension
Plan's assets did not include annuities or similarly
conservative investments and the purchase of any such
investments was not anticipated. Accordingly, the actuary
violated ERISA by using an interest rate that the actuary
acknowledged was not entirely based on the Pension Plan's
expected return on assets.

**CONCLUSION**

The Court has considered all the arguments of the parties.
To the extent not specifically addressed above, the arguments
are either moot or without merit. For the foregoing reasons,
ConvergeOne's motion for a judgment on the pleadings confirming
the arbitration award, ECF No. 22, is **granted** and the cross
motion by the Penson Plan to vacate the arbitrator's decision,
ECF No. 24, is **denied.** The Clerk is directed to enter judgment

confirming the arbitrator's award. The Clerk is also directed to
close all open motions in this case.

**SO ORDERED.**

**Dated:**      **New York, New York**
             **April 16, 2024**

                                    **John G. Koeltl**
                          **United States District Judge**